U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 APR -2 PM 1: 10

CLERK

BY ＿＿＿(AW＿＿＿
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

FRANCISCO MARQUEZ, )
)
Plaintiff, )
)
v. ) Case No. 2:17-cv-00017
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
Defendant. )

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE COMMISSIONER'S DECISION AND GRANTING THE COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 9 & 12)

Plaintiff Francisco Marquez is a claimant for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("SSA"). He brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner that he is not disabled. On August 16, 2017, Plaintiff filed his motion to reverse. (Doc. 9.) On October 16, 2017, the Commissioner filed her motion to affirm, at which point the court took the pending motions under advisement.

Plaintiff is represented by D. Lance Tillinghast, Esq. The Commissioner is represented by Special Assistant United States Attorney Graham C. Morrison.

On appeal, Plaintiff raises the following issues: (1) whether Administrative Law Judge ("ALJ") Joshua Menard erred in finding Plaintiff constructively waived his right to appear at a hearing; (2) whether the ALJ's RFC determination properly considered Plaintiff's mental health limitations; and (3) whether the ALJ erred by not addressing a report prepared by a counselor from the State of Vermont's Division of Vocational Rehabilitation.

I.   **Procedural Background.**

On May 18, 2015, Plaintiff filed DIB and SSI applications, alleging that he was disabled as of October 7, 2010. He later amended his alleged onset date to November 19, 2012. The Commissioner denied Plaintiff's applications initially on August 19, 2015 and on reconsideration on January 15, 2016. Thereafter, Plaintiff filed a written request for a hearing on February 2, 2016. On July 26, 2016, ALJ Menard held a hearing at which Plaintiff did not appear. Plaintiff's former counsel, Phyllis Rubenstein, Esq., represented him at the hearing, and Louis A. Laplante, a vocational expert ("VE"), testified. On August 3, 2016, ALJ Menard issued a decision denying Plaintiff's request to schedule another hearing and concluding that he was not disabled. The Appeals Council denied Plaintiff's request for review on December 13, 2016. As a result, ALJ Menard's decision stands as the Commissioner's final decision.

II.   **Factual Background.**

Plaintiff is a fifty-five-year-old man who was fifty-years old at the time of his alleged disability onset date, as amended. He has two children and is married, although he has been separated from his wife since August 2015. Plaintiff has a high school education and previous work experience in construction, as a prep cook, and dishwasher.

A.   **Plaintiff's Relevant Medical History.**

On August 11, 2011, J. Paul Coates, M.A., a counselor for the State of Vermont's Division of Vocational Rehabilitation, met with Plaintiff and completed a certification of eligibility for benefits. Mr. Coates noted that Plaintiff's primary disability was alcoholism and identified no other disabilities. For the certification of eligibility form, he indicated that Plaintiff's alcoholism "results in a substantial impediment to employment[,]" finding Plaintiff eligible for vocational rehabilitation services. (AR 321.)

Mr. Coates concluded that Plaintiff had chronic functional loss in self-care, self-direction, and interpersonal skills. He also noted mobility limitations caused by multiple DWI convictions. In support of these findings, Mr. Coates checked boxes indicating that Plaintiff required guidance with personal finances, needed a process to review decisions and judgments before acting, and experienced hospitalization or in-patient rehabilitation

2

for his condition. He further indicated that Plaintiff had limitations in self-direction and needed support with initiation and follow-through, guidance to understand his impact on the work environment, and assistance in adjusting to new situations. Regarding limitations with interpersonal skills, Mr. Coates found that Plaintiff needed support for successful social integration and guidance in interpreting social cues and that his past actions have adversely affected others. In completing the form, however, Mr. Coates did not check boxes suggesting that Plaintiff had limitations in work skills. He did not indicate whether Plaintiff would take longer to complete a task, require specialized supervision or support to remain on-schedule, be sensitive to constructive feedback, or need concrete and repeated demonstrations.

Plaintiff's treatment records also reveal a history of back pain. On November 29, 2011, he was admitted to the emergency department at Central Vermont Hospital for a back injury with pain and swelling. Plaintiff reported that he had suffered low back pain for six days after bending down and picking up a laundry basket. He was prescribed medication and discharged. On December 8, 2011, Justine Gadd, P.A. evaluated Plaintiff's lower back pain, noting that he moved slowly from a chair to the exam table and had decreased range of motion and tenderness in his lower back. Thomas Churchin, M.D. met with Plaintiff on December 16, 2011 and referred him to physical therapy. An x-ray performed on February 16, 2012 found "mild thoracolumbar scoliosis[]" and "mild narrowing of the left sacroiliac joint, with findings raising the suspicion for subchondral bone resorption[]" and "asymmetric left sided [sacroiliitis]." (AR 452.)

On February 10, 2012, Joseph Brock, M.D. began treating Plaintiff primarily for his back pain. On June 1, 2015, Plaintiff generally appeared to be in "no acute distress[]" due to his lower back though he was "somewhat uncomfortable." (AR 328.) After a June 29, 2015 appointment, Dr. Brock assessed that Plaintiff "has been stable on his current opioids for chronic low back pain for years[]" and, although Plaintiff has an "occasional flare" of pain, he "tries to walk daily [for] several miles and he is out looking for work." (AR 324.) Dr. Brock concluded that Plaintiff "is disabled with his low back

3

pain[] [and] lumbar degenerative disc disease." *Id.* Similarly, on October 7, 2015, Dr. Brock opined that Plaintiff could not work.

Despite these conclusions, ALJ Menard found that Plaintiff could perform light work, determining that the "evidence of record does not support the full extent of limitations identified by Dr. Brock." (AR 41.) On appeal, Plaintiff does not contend that ALJ Menard erred in analyzing the functional limitations caused by his back pain.

Three years later, during a September 21, 2015 appointment, Dr. Brock diagnosed Plaintiff with "major depressive disorder, single episode, severe without psychotic features[.]" (AR 373.) Dr. Brock noted that Plaintiff's wife left him the month prior to the appointment and that Plaintiff reported that he had "[l]ittle interest or pleasure in doing things" and was "[f]eeling down, depressed, [and] hopeless[.]" (AR 372.) He admitted to having thoughts that he "would be better off dead or of hurting [himself] in some way" for several days. *Id.* Dr. Brock described Plaintiff's mood as irritable and angry and reported that Plaintiff experienced sleep disturbance. He prescribed Plaintiff two antidepressants: Fluoxetine and Trazodone.

On October 19, 2015, Plaintiff met with Dr. Brock and reported that he was stressed by the possibility of losing his house and becoming homeless in the next thirty days due to his lack of income. Dr. Brock noted Plaintiff's stress and sleep disturbance in subsequent appointments on November 23, 2015 and December 17, 2015.

On January 28, 2016, Dr. Brock found Plaintiff's depression was "worsening" (AR 484) but "[s]ituational" due to the potential of "losing his residence soon[.]" (AR 486.) He also noted that Plaintiff had no barriers to learning. On March 23, 2016, Dr. Brock conducted a mental status exam, reporting that Plaintiff had appropriate appearance, coherent thought processes, normal speech, good judgment, and normal cognition. He recorded that Plaintiff had no suicidal ideation or delusions, but had blunted affect and a depressed mood.

On July 8, 2016, Dr. Brock completed a medical source statement with regard to Plaintiff's depression. He concluded that depression did not affect Plaintiff's ability to understand, remember, or carry out instructions or inhibit his ability to interact

4

appropriately with supervisors, co-workers, or the public, as well as respond to changes in a routine work setting, noting that Plaintiff's "social skills are intact[.]" (AR 539.)[1] Dr. Brock indicated that Plaintiff was mildly limited in making judgments for simple work-related decisions, but moderately limited in making judgments for complex work-related decisions. He also opined that Plaintiff was moderately limited in understanding, remembering, and carrying out complex instructions. He reported that no other capabilities were affected by Plaintiff's depression.

On August 30, 2016, Dr. Brock submitted a letter opining that Plaintiff was physically disabled due to his lumbar degenerative disc disease and chronic low back pain. He also concluded that Plaintiff was "mentally disabled from work with severe major depression (unipolar)[]" that is "treatment resistant." (AR 19.)

On November 19, 2015, Benjamin C. Welsh, LICSW, LADC began treating Plaintiff on a weekly basis for his mental health conditions. After the initial interview, Mr. Welsh found Plaintiff met the criteria for post-traumatic stress disorder ("PTSD") and anxiety and had symptoms of depression. He noted Plaintiff's well-groomed appearance, appropriate behavior and affect, cooperative attitude, and normal mood and speech. He also recorded that Plaintiff had good judgment and insight and intact short- and long-term memory. Plaintiff informed Mr. Welsh that he feels "hyper-alert around groups of people[]" (AR 458) and that he had "a lot [of] difficulty concentrating when he is alone." (AR 456.) He stated that he was worried about losing his apartment and becoming homeless and acknowledged that his wife had recently moved out.

On March 4, 2016, Mr. Welsh authored a treatment report in which he recorded that Plaintiff was "under a lot of stress and anxiety as it relates to his housing and his overall security." (AR 503.) He noted that Plaintiff recently experienced the "retriggering of his PTSD symptoms [which] includes a reoccurrence of hyper-vigilant

---

[1] Dr. Brock arguably contradicted this conclusion by also indicating on the same form that Plaintiff had "[m]ild" limitations in interacting appropriately with the public, supervisors, co-workers, and in responding to usual work situations and changes in a routine work setting. (AR 539.)

5

behavior at home as well as in public." *Id.* He further indicated that Plaintiff suffered from a significant reduction in sleep and that Plaintiff felt "hopeless" about his situation. *Id.* In Mr. Welsh's opinion, Plaintiff "is not able to work due [to] his mental health status and has very limited resources to make ends meet." (AR 504) Mr. Welsh reached this same conclusion in a report authored on May 25, 2016.

In a July 22, 2016 letter, Mr. Welsh summarized a recent appointment with Plaintiff wherein he observed an increase in Plaintiff's anxiety and PTSD symptoms and concluded that Plaintiff "seems to be close to a break down." (AR 544.) Mr. Welsh noted that Plaintiff "seems to be having a difficult time being [able] to cope with everyday situations and tasks." *Id.* During the appointment, Plaintiff "stated that he feels like he is [barely] maintaining his ability to keep his composure and get his activities of daily living accomplished." *Id.*

After ALJ Menard rendered his August 3, 2016 decision, in a September 21, 2016 treatment report, Mr. Welsh noted that Plaintiff reported being "under a lot of stress and anxiety as it relates to his housing and his overall security[]" and that "much of [his mental health issues] started when his wife left him for someone else." (AR 17.) He further stated that he "has been so overwhelmed and unable to manage his anxiety and depression that he could not leave the house." *Id.* Regarding his inability to attend the hearing before the ALJ, Plaintiff related that "he was having panic attacks and was not able to leave the house." *Id.*

During the September 21, 2016 appointment, Plaintiff reported an increase in his PTSD symptoms due to the upcoming anniversary of an event that triggers the symptoms. Mr. Welsh opined that Plaintiff "has continued to exhibit high levels of anxiety accompanied by increasing panic attacks as well as other physical symptoms that are related to long term stress." (AR 18.) Despite ongoing mental health treatment, Mr. Welsh concluded that "at this time his prognosis is guarded." *Id.*

On December 18, 2015, Kathryn M. Rickard, Psy.D. completed a mental status examination for Vermont Disability Determination Services. She diagnosed Plaintiff with unspecified anxiety disorder, unspecified depressive disorder, and "[a]lcohol use,

6

mild, in sustained remission." (AR 480.) Dr. Rickard reported that Plaintiff had never been hospitalized for a mental health disorder and determined that Plaintiff's ability "to engage in activities appeared to be affected by his physical condition mostly and somewhat by his emotional state." *Id.* She noted that Plaintiff could clean the house, cook, garden, do laundry, read, shop, complete errands, attend appointments, manage his own finances, use the phone, and exercise. Regarding his social functioning, Dr. Rickard stated that Plaintiff "sometimes feels comfortable with face-to-face social contact but not when [he] feels withdrawn." (AR 478.)

In conducting her mental status examination, Dr. Rickard observed Plaintiff made consistent and appropriate eye contact and affect, was cooperative, and had a logical speech pattern that was normal in rate and volume. She noted that his thoughts appeared to be clear and organized and that he was oriented to person, place, time, and situation. Assessing Plaintiff's cognitive abilities, Dr. Rickard found that he had no impairments in short- or long-term memory and he was "able to gather his thoughts and concentrate on intellectual tasks[,]" although Plaintiff could only recall one out of three words several minutes after rehearsal and could not remember Dr. Rickard's name forty minutes into the interview. (AR 479.) Dr. Rickard assigned Plaintiff a score of twenty-seven out of thirty on the Mini-Mental Status Exam ("MMSE"), which "does not indicate the presence of cognitive impairment." *Id.*

During the interview with Dr. Rickard, Plaintiff reported symptoms of anxiety and depression arising after his wife left him four months prior to the examination. He described feeling nervous and irritable and reported an inability to sleep or eat. Although he wanted to "get out of the house[,]" his parole status from his last DWI prevented him from doing so. (AR 480.) Plaintiff stated that depression left him "not wanting to do anything out of fear something will happen[]" and that he was tired "of things happening to him[.]" *Id.* He further admitted that "he does not feel he is achieving anything, [that] he just wants to scream, [and that] he feels like crying a lot, [and] staying by himself for hours[.]" *Id.*

7

### B. State Agency Consultant Atkins's Assessment.

On December 31, 2015, State agency consultant Ellen Atkins, Ph.D. completed a mental RFC assessment for Plaintiff's Disability Determination Explanation on reconsideration. Dr. Atkins concluded that Plaintiff was "[n]ot significantly limited" in carrying out "very short and simple instructions[]" and "[m]oderately limited" in carrying out detailed instructions. (AR 95.) She found Plaintiff was not significantly limited in the ability to work in coordination with or in proximity to others without being distracted by them and was not significantly limited in the ability to make simple work-related decisions. Regarding the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances[,]" Dr. Atkins found Plaintiff was "[m]oderately limited." *Id.*

According to Dr. Atkins, Plaintiff would be "[m]oderately limited" in the ability to complete a normal workday and workweek without interruptions from his psychologically-based symptoms and in performing at a consistent pace without an unreasonable number and length of rest periods. *Id.* Explaining this conclusion, Dr. Atkins opined that Plaintiff would be "[l]imited for high production norm tasks[]" and that "[e]pisodic exacerbations in anxiety or depression can temporarily undermine [his] cognitive efficiency. Otherwise, [he] can sustain [concentration, persistence, or pace] over two hours over [a] typical work day/week for simple 1-3 step tasks." *Id.*

### C. The July 26, 2016 Hearing Before ALJ Menard.

As noted, Plaintiff did not appear at the July 26, 2016 hearing before ALJ Menard. Attorney Rubenstein, Plaintiff's counsel at the time, advised ALJ Menard that she was unaware of Plaintiff's whereabouts and was unable to reach him the morning of the hearing. ALJ Menard noted that, on May 17, 2016, Plaintiff signed, dated, and returned a Notice of Hearing. As a result, the ALJ found that Plaintiff had constructively waived his right to appear at the hearing. Without knowledge at the time of the reason for Plaintiff's absence, Attorney Rubenstein objected to ALJ Menard's constructive waiver finding on the basis of Plaintiff's mental health, stating that Plaintiff's PTSD and anxiety symptoms cause difficulty in "coping with everyday situations and tasks." (AR 55.) ALJ Menard

informed Attorney Rubenstein that if she discovered the reason for Plaintiff's absence, she should submit a written explanation with any supporting medical documentation. The ALJ then proceeded with the hearing by admitting exhibits into the record, hearing argument from Plaintiff's counsel, and considering the testimony of the VE.

Three days after the hearing, on July 29, 2016, Attorney Rubenstein submitted a letter to ALJ Menard, stating that Plaintiff called her on July 28, 2016 to inform her that his "driver cancelled on him at the last minute." (AR 312.) Plaintiff further stated that he "had been scared to call [his counsel] about missing his hearing" and had "also lost his phone." *Id.* Plaintiff requested a rescheduled hearing.

### III. ALJ Menard's August 3, 2016 Decision.

In order to receive disability benefits under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation process determines whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). "The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

9

On August 3, 2016, ALJ Menard denied Plaintiff's request for a rescheduled hearing and application for benefits. In so ruling, he determined that Plaintiff had not engaged in substantial gainful activity since November 19, 2012. At Step Two, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disorder, affective disorder, anxiety disorder, and a history of alcohol abuse. At Step Three, he concluded that none of Plaintiff's impairments, either independently or collectively, met or exceeded the severity of one of the listed impairments.

At Step Four, ALJ Menard determined that Plaintiff had the RFC to:

> [P]erform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except that he can occasionally climb stairs and ramps and never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can have frequent exposure to unprotected heights, moving mechanical parts, and vibration. [Plaintiff] is limited to performance of simple, routine tasks.

(AR 36-37.)

In analyzing Plaintiff's RFC, ALJ Menard found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 37.) At Step Five, ALJ Menard concluded that Plaintiff was unable to perform any past relevant work, but could perform a significant number of jobs in the national economy such as "mail clerk[,]" "shirt folder[,]" and "housekeeper cleaner[.]" (AR 43.) For these reasons, ALJ Menard found Plaintiff was not disabled from November 19, 2012 to August 3, 2016, the date of his decision.

## IV. Conclusions of Law and Analysis.

### A. Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013)

10

(internal quotation marks omitted) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149. "It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted) (alteration in original).

### B. Whether ALJ Menard Erred in Finding Plaintiff Constructively Waived His Right to a Hearing.

As an initial matter, Plaintiff argues that ALJ Menard erred in finding a constructive waiver of his right to appear at the hearing. He maintains that the ALJ should have issued a Show Cause Order and offered a supplemental hearing for Plaintiff to testify. The Commissioner responds that ALJ Menard followed the appropriate procedure in finding constructive waiver.

In support of their positions, both parties cite to the Commissioner of Social Security's Hearings, Appeals, and Litigation Manual ("HALLEX") which includes procedures for determining whether a plaintiff has constructively waived the right to appear at a hearing before an ALJ. HALLEX procedures are not regulations and therefore do not bind the Social Security Administration. *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (finding that the Social Security "Claims Manual is not a regulation. It has no legal force, and it does not bind the [Social Security Administration]."); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010) (noting that HALLEX is "an internal Social Security Administration policy manual[] . . . [which] does not impose judicially enforceable duties on either the ALJ or this court."); *Dority v. Comm'r of Soc. Sec.*, 2015 WL 5919947, at *5 (N.D.N.Y. Oct. 9, 2015) ("HALLEX

11

policies are not regulations and therefore not deserving of controlling weight.") (internal quotation marks omitted).

"Volume I, Section 2-4-25 of the HALLEX states that a [plaintiff] constructively waives [the] right to appear at a hearing under certain limited circumstances." *Mandro v. Berryhill*, 2017 WL 4071104, at *4 (D. Conn. Sept. 14, 2017). Because 20 C.F.R. § 404.936 "governs situations in which claimants request a continuance of their hearing for good cause[,] . . . [t]he procedures laid out in HALLEX" for finding constructive waiver "do not authorize procedures not addressed in the regulations or statute, but are instead in the category of procedures which are more demanding than the statute or its regulations." *Id.* at *6 (internal quotation marks omitted). "[A]n administrative agency is required to follow its own internal policies when they accord with or are more demanding than the statute or its regulations." *Dority*, 2015 WL 5919947, at *5 (internal quotation marks and alteration omitted); *see also Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (finding that the Social Security Administration should follow HALLEX policies, although they are not binding, when individual rights are affected, even when the policies are more "rigorous than would otherwise be required") (internal quotation marks omitted).

According to the HALLEX, when a plaintiff's representative appears at the scheduled hearing without the plaintiff, the ALJ may determine that the plaintiff has constructively waived the right to appear at the hearing if "[1] [t]he representative is unable to locate the claimant; [2] [t]he Notice of Hearing was mailed to the claimant's last known address; and [3] [t]he contact procedures required by 20 CFR [§§] 404.938 and 416.1438, as described in HALLEX I-2-3-20, have been followed." HALLEX I-2-4-25(D)(2), 1993 WL 643012 (May 1, 2017); *see also Taylor v. Berryhill*, 2017 WL 3394749, at *7 (N.D. Ohio Aug. 8, 2017) (concluding that the ALJ properly found that the plaintiff constructively waived his right to appear at hearing when "Plaintiff's counsel was unable to locate his client for the hearing[,]" "Plaintiff acknowledged receipt of the hearing notices[,] and "the contact procedures required by 20 C.F.R. §§ 404.938 and 416.1438, as described in HALLEX I-2-3-20 were followed.") (footnote omitted).

If the ALJ finds that the plaintiff constructively waived the right to appear at the hearing, the ALJ may nonetheless "proceed with the hearing, accepting the testimony of the witness(es) and allowing the appointed representative to question the witness(es) and make arguments on the [plaintiff's] behalf." HALLEX I-2-4-25(D)(2)(a), 1993 WL 643012. In such a situation, the ALJ must:

> advise the appointed representative, either on the record during the hearing or in writing thereafter, that he or she will not send a Request to Show Cause for Failure to Appear to the claimant because the claimant has constructively waived the right to appear at a hearing. When done in writing, the ALJ must associate the writing with the record.

*Id.*

At the July 26, 2016 hearing before ALJ Menard, Plaintiff's counsel affirmed for the record "that she was unaware of [Plaintiff's] current location[]" and was "unable to get a hold of him" the morning of the hearing. (AR 53.) Prior to the hearing, on May 2, 2016, the Commissioner sent Plaintiff a Notice of Hearing which complied with 20 C.F.R. §§ 404.938 and 416.1438. On May 17, 2016, Plaintiff acknowledged receipt of the Notice and indicated that he would be present at the time and place shown on the Notice. *See* AR 167, 188. Accordingly, the ALJ properly found that Plaintiff constructively waived his right to appear at the hearing.

Plaintiff contends that ALJ Menard erred by not making a "good cause[]" determination for failure to appear and did not consider his mental health limitations in finding constructive waiver. (Doc. 9-1 at 3.) However, HALLEX I-2-4-25(D)(2)(a), the basis for ALJ Menard's constructive waiver finding, does not require a finding of good cause.[2]

Although the record does not indicate that ALJ Menard informed Plaintiff's counsel that he will not send a Request to Show Cause for Failure to Appear after finding constructive waiver, the ALJ nevertheless advised Plaintiff's counsel to obtain and

---

[2] In contrast, pursuant to HALLEX I-2-4-25(D)(2)(b), in the absence of constructive waiver, the ALJ must consider whether Plaintiff "fail[ed] to show good cause for failure to appear at the scheduled hearing[.]"

13

provide medical documentation in support of an objection to waiver based on Plaintiff's mental health. *See Carpenter v. Colvin*, 2014 WL 4637085, at *2 (N.D.N.Y. Sept. 16, 2014) (noting that the ALJ did not issue a Request to Show Cause for Failure to Appear, but nonetheless "considered the reasons given by [Plaintiff's] counsel for her failure to appear, and determined that good cause did not exist for [Plaintiff's] absence."). Three days after the hearing, on July 29, 2016, Plaintiff's counsel submitted a letter to the ALJ, requesting a rescheduled hearing, in which she related that Plaintiff's "driver cancelled on him at the last minute[,]" that he "had been scared to call [his attorney] about missing his hearing[,]" and that he "lost his phone." (AR 312.) In his decision, ALJ Menard considered the explanation provided by Plaintiff's counsel, but denied the request to reschedule the hearing "[a]s the hearing had already been held and concluded[.]" (AR 32.) Because a good cause finding was not required and because Plaintiff's mental health limitations were not unequivocally the basis for his failure to appear,[3] a remand for a rescheduled hearing is not warranted.

### C. Whether ALJ Menard's RFC Determination is Supported by Substantial Evidence.

Challenging ALJ Menard's RFC determination, Plaintiff asserts that the RFC does not adequately account for his mental health limitations. He contends that ALJ Menard did not explain why he did not adopt the entirety of State agency consultant Dr. Atkins's opinions, specifically her findings that Plaintiff is "[l]imited for high production norm tasks[]" and that "[e]pisodic exacerbations in anxiety or depression can temporarily undermine [his] cognitive efficiency." (AR 95.) The Commissioner responds that ALJ Menard reasonably interpreted Dr. Atkins's opinions in formulating Plaintiff's RFC.

"If there is substantial evidence to support the [the ALJ's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "An ALJ need not recite

---

[3] After ALJ Menard issued his decision, Plaintiff related to Mr. Welsh during a September 21, 2016, that he was unable to attend the hearing because he was having panic attacks. However, during a September 19, 2016 appointment with Dr. Brock, Plaintiff reiterated that he missed the hearing because "his ride backed out, he was scared to call [his counsel] and he had lost his phone." (AR 21.)

14

every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'" *Cichocki*, 729 F.3d at 178 n.3 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)); *see also Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (noting that an ALJ need not "reconcile explicitly every conflicting shred of medical testimony"). Provided an ALJ considers "all evidence" in the record before making a determination as to whether a claimant is eligible for benefits, 20 C.F.R. § 416.920(a)(3), a remand is warranted only "when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him." *Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150-51 (2d Cir. 1984).

In this case, ALJ Menard's determination that Plaintiff "is limited to performance of simple, routine tasks[]" is supported by substantial evidence. (AR 37.) Dr. Atkins concluded that Plaintiff was not significantly limited in carrying out short and simple instructions and moderately limited in carrying out more detailed instructions. She found that Plaintiff was only moderately limited in maintaining attention and concentration and in the ability to complete a normal work schedule due to his mental health impairments.[4]

Similarly, Dr. Rickard, whose opinions the ALJ assigned "great weight[,]" concluded that Plaintiff had no impairments in short or long-term memory, his thoughts were clear and organized, and he was capable of concentrating. (AR 41.) She further observed that he made consistent and appropriate eye contact, was cooperative, and had a logical speech pattern that was normal in rate and volume. In assigning Plaintiff a twenty-seven out of thirty on the MMSE, Dr. Rickard found no indication of cognitive impairment. Despite Plaintiff's mental health conditions, Dr. Rickard noted Plaintiff could still complete activities of daily living such as exercising, household cleaning, cooking, gardening, doing laundry, reading, shopping, completing errands, attending appointments, using the phone, and managing his own finances.

---

[4] Dr. Brock, Plaintiff's treating primary care physician, also found Plaintiff was moderately limited in making judgments on complex work-related decisions. Both Dr. Brock's and Mr. Welsh's treatment notes support Dr. Atkins's determination that Plaintiff's depression was situational due to personal life stressors.

15

Although ALJ Menard did not discuss every aspect of Dr. Atkins's opinion, he adequately incorporated her conclusions in Plaintiff's RFC. Because none of the opinions regarding Plaintiff's mental health limitations found more than moderate limitations in Plaintiff's work-related functioning, a remand is not required. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (concluding that the ALJ's determination that the plaintiff could perform unskilled work was "well supported[]" because "[n]one of the clinicians who examined her indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations.").

### D. Whether ALJ Menard Erred by Not Addressing the Opinion of J. Paul Coates in His Decision.

Plaintiff points out that ALJ Menard's decision does not mention the opinions provided by J. Paul Coates, a counselor from the Vermont Vocational Rehabilitation Services Department, as reflected in a form Mr. Coates completed on August 11, 2011. In response, the Commissioner argues that this omission does not constitute reversible error, as Mr. Coates completed the form over a year prior to Plaintiff's alleged onset date and his opinions do not directly contradict the ALJ's decision.

"Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also Briscoe v. Astrue*, 892 F. Supp. 2d 567, 582 (S.D.N.Y. 2012) (finding an evaluation rendered before the alleged disability onset date "by more than 18 months[]" was "not necessarily material" to the ALJ's decision). Moreover, because "disability determinations from state agencies are "based on [their] own rules, [they] [are] not binding on [the ALJ][.]" 20 C.F.R. §§ 404.1504, 416.904; *see also Scanlon v. Colvin*, 2016 WL 4944332, at *9 (W.D.N.Y. Sept. 16, 2016) (finding it proper for the ALJ to discount the weight assigned to a report prepared in the workers' compensation context, "which is not governed by the same standard as applications for Social Security disability benefits.") (internal quotation marks omitted). When an ALJ does not address a report in his decision, remand is not necessary if the report is "not significantly more favorable to"

16

the plaintiff and there is "no reasonable likelihood that [his] consideration [of that report] would have changed the ALJ's determination[.]" *Zabala*, 595 F.3d at 410.

Here, in addition to predating Plaintiff's alleged disability onset date, Mr. Coates's evaluation considered only Plaintiff's alcoholism, identifying no other disability, and was provided to determine Plaintiff's eligibility for Vermont Vocational Rehabilitation Services, not to determine whether Plaintiff was eligible for DIB and SSI benefits. In rendering his opinions, Mr. Coates indicated that Plaintiff had chronic functional loss in self-care, self-direction, and interpersonal skills through a checklist form which did not explain his reasoning or provide relevant evidence in support of his conclusions. *See Slattery v. Colvin*, 111 F. Supp. 3d 360, 373 (W.D.N.Y. June 29, 2015) (finding that checklist forms bereft of explanation "are of limited evidentiary value."). He did not indicate that Plaintiff had work skills limitations. Because Mr. Coates's report was of limited relevance and was "not significantly more favorable to" Plaintiff's claim than other evidence which ALJ Menard considered, no reversible error lies in the failure to specifically address the report in the ALJ's disability determination. *Zabala*, 595 F.3d at 410.

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's motion to reverse the Commissioner's decision (Doc. 9) and GRANTS the Commissioner's motion to affirm (Doc. 12).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 2nd day of April, 2018.

Christina Reiss, District Judge
United States District Court

17